UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

DEAN LEE RECTOR,

        Plaintiff,        Case No. 1:10-cv-904

v.        Honorable Paul L. Maloney

PATRICIA L. CARUSO et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. §§ 1983, 1985 and 1986. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

I. Factual allegations

Plaintiff presently is incarcerated at the Carson City Correctional Facility. In his *pro se* complaint, Plaintiff sues Michigan Department of Corrections (MDOC) Director Patricia L. Caruso, Legal Affairs Administrator Richard B. Stapleton, Deputy Warden Tony Trierweiler, Administrator Assistant Donna Schafer, Grievance Coordinator Sharon Duncan, Mailroom Supervisor Debbie Dutcher, Resident Unit Manager (RUM) Robert Mote, the City of Lansing and Carson City.

Plaintiff's complaint concerns the seizure of a book that contained Uniform Commercial Code (UCC) materials. On June 8, 2010, the prison mail room received a package addressed to Plaintiff that included a book titled Traveling by Right. (Compl., Page ID #4, docket #1.) The MDOC rejected the mail under MDOC Policy Directive 05.03.118 because the book was on the restricted publication list. Paragraph MM(3) of the prisoner mail policy prohibits mail advocating or promoting the violation of state or federal laws, such as "the filing of a false or fraudulent UCC financing statement in violation of MCL [§] 440.9501." MICH. DEP'T OF CORR., Policy Directive 05.03.118, ¶MM(3) (eff. Sept. 14, 2009). Moreover, paragraph MM(11) of the prisoner mail policy prohibits mail that encourages or provides instruction in the commission of a criminal activity, including the "filing of a false or fraudulent UCC lien." *Id*., at ¶ MM(11). Defendant Dutcher immediately sent Plaintiff a Notice of Package/Mail Rejection (Notice) informing him of the rejection. The Notice also provided that "[n]o further hearing [was] required." (App. A to Compl., Page ID #10, docket #1-2.) Plaintiff nevertheless returned the Notice to RUM Mote with a request for a hearing pursuant to MDOC Policy Directive 05.03.118, ¶ PP, which was subsequently denied.

On June 12, 2010, Plaintiff filed a Step I grievance, complaining about the rejection of his mail. Defendants Duncan and Schafer denied Plaintiff's Step I grievance after finding that the rejection of Plaintiff's mail was a non-grievable issue. Plaintiff then appealed the denial of his grievance to Step II. In his Step II response, Defendant Trierweiler stated that the denial of Plaintiff's grievance was proper because the book had been placed on the restricted publication list after an administrative hearing. According to MDOC Policy Directive 05.03.118, ¶ WW, "[o]nce a publication is placed on the Restricted Publications List, it shall be rejected at all facilities without the need for a hearing to determine the basis for the rejection removed, unless otherwise indicated on the Restricted Publication List." Plaintiff subsequently filed a Step III appeal to the Office of Legislative Corrections Ombudsman. On August 5, Plaintiff received a response from the Office of Legislative Corrections Ombudsman stating that they did not have the resources to investigate Plaintiff's claims.

Plaintiff argues that the MDOC prisoner mail policy violates his First Amendment right to receive mail. Plaintiff also alleges that Defendants authorized the seizure of his personal property in violation of his due process and equal protection rights. Plaintiff further argues that the rejection of his book violated the preliminary injunction issued by the Eastern District of Michigan in *Jones v. Mich. Dep't of Corr. et al.,* Case No. 2:05-cv-72817 (E.D. Mich.). Plaintiff finally complains that Defendants engaged in a conspiracy to violate his constitutional rights.

Plaintiff requests declaratory relief and compensatory and punitive damages.

II.  <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, ___ F.3d ___, 2010 WL 5288892, at *2 (6th Cir. Dec. 28, 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A. **Municipality Liability**

Plaintiff lists the City of Lansing and Carson City as Defendants but he does not make any allegations against those Defendants. A municipality may only be liable under § 1983 when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff. *Los Angeles County v. Humphries*, 131 S. Ct. 447, 453-54 (2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1974)). In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Doe v. Claiborne County*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving,* 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508-509. It is the court's task to identify the officials or governmental bodies which speak with final policymaking authority for the local government in a particular area or on a particular issue. *McMillian v. Monroe County*, 520 U.S. 781, 784-85. The city council of Lansing and the city council of Carson City are the policymakers for those cities.

Plaintiff's action fails at the first step because his allegations have not identified a policy or custom adopted by the city council of either Lansing or Carson City, which has violated his constitutional rights. A "policy" includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the city council of Lansing or Carson City. *Monell*, 436 U.S. at 690. Plaintiff has not asserted that there is an official policy adopted by the city council of either Lansing or Carson City.

Plaintiff also has not identified a custom. The Sixth Circuit has explained that a "custom"

> . . . for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law. In turn, the notion of "law" includes deeply embedded traditional ways of carrying out state policy. It must reflect a course of action deliberately chosen from among various alternatives. In short, a "custom" is a "legal institution" not memorialized by written law.

*Doe*, 103 F.3d at 507 (citations and quotations omitted). Plaintiff has not alleged that the city council of either Lansing or Carson City had a custom that violated Plaintiff's constitutional rights.

In summary, Plaintiff has failed to allege that the city council of either Lansing or Carson City, as the policymaker for those cities, had a policy or custom that caused Plaintiff to be deprived of a constitutional right. Where a plaintiff fails to allege that a policy or custom existed, dismissal of the action for failure to state a claim is appropriate. *Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. 1987); *see also Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. 1993) (affirming dismissal of § 1983 action when plaintiff allegation of policy or custom was conclusory, and plaintiff failed to allege facts tending to support the allegation). Therefore, Plaintiff fails to state a claim upon which relief may be granted against Lansing and Carson City.

B. **Grievance**

Plaintiff fails to make specific factual allegations against Defendants Duncan, Schafer and Trierweiler, other than his claim that they denied his grievance at various steps in the three-step grievance process. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. at 1948; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to

act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendants Duncan, Schafer and Trierweiler engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them for the denial of his grievance.

C.     **First Amendment**

Plaintiff argues that Defendants violated his First Amendment rights by confiscating a book that contained UCC materials. It is well accepted that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish,* 441 U.S. 520, 545 (1979); *see also Turner v. Safley,* 482 U.S. 78, 84 (1987) ("[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution"). Operating a prison, however, is a difficult task requiring "expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner,* 482 U.S. at 85. Recognizing this, courts have consistently held that issues involving "the adoption and execution of policies and practices that in [the] judgment [of prison officials] are needed to preserve internal order and discipline and to maintain institutional security" in most circumstances "should be accorded wide-ranging deference." *Flagner v. Wilkinson,* 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Wolfish,* 441 U.S. at 547).

When reviewing an inmate's claim of constitutional violation, courts must balance this policy of judicial restraint with the need to protect the inmate's constitutional rights. *See*

*Turner,* 482 U.S. at 85. The standard by which this balancing occurs was articulated by the *Turner* Court, which held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. This standard represents a "reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Flagner,* 241 F.3d at 481 (quoting *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349 (1987)).

The *Turner* Court identified four factors that are relevant in determining the reasonableness of a challenged prison regulation:

1. there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2. whether there are alternative means of exercising the right that remain open to prison inmates;

3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4. whether there are ready alternatives available that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests.

*Flagner,* 241 F.3d at 484 (quoting *Turner,* 482 U.S. at 89-91). Failure to satisfy the first factor renders the regulation unconstitutional without regard to the remaining three factors. If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the actions at issue are reasonably related to a legitimate penological interest. *Flagner,* 241 F.3d at 484. It should further be noted that the *Turner* standard is not a "least restrictive alternative" test requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Id.*

(quoting *Turner,* 482 U.S. at 90-91). Instead, the issue is simply whether the contested policies are reasonably related to a legitimate penological interest. *Id*.

The abusive practice of prisoners filing baseless liens and/or UCC financing statements for the purpose of harassment and credit impairment of the alleged debtor (almost always a state or federal official involved with securing the prisoner's incarceration) is well documented. *See, e.g., United States v. Gordon,* No. CV 205-158, 2005 WL 2237640 (S.D. Ga. Aug. 25, 2005) (prisoners filed "facially absurd" liens and UCC financing statements designed to harass and intimidate government officials in the performance of their duties); *United States v. Orrego,* No. 04 CV 0008 SJ, 2004 WL 1447954 (E.D.N.Y. June 22, 2004) (prisoner purported to copyright his name, after which he filed fraudulent liens against various government officials for using his name without permission or payment); *Ray v. Williams,* No. CV-04-863-HU, 2005 WL 697041 (D. Or. Mar. 24, 2005) (prisoner engaged in fraudulent scheme by which he filed false UCC filings against government officials seeking payment for unauthorized use of his copyrighted name); *United States v. Martin*, 356 F.Supp.2d 621 (W.D. Va. 2005) (prisoner filed fraudulent UCC financing statements naming himself as the secured party for a $108,000,000.00 debt owed him by various government officials); *United States v. Brum,* No. CIV. A. 105CV110, 2005 WL 1606584 (E.D. Tex. July 1, 2005) (prisoner filed fraudulent liens and UCC financing statements against the judge and prosecutor involved in his criminal conviction); *Cooperwood v. McDonald,* No. 2:05-CV-111, 2005 WL 1427718 (W.D. Mich., June 13, 2005) (prisoner filed a fraudulent lien "for infringement of his copyrighted name"); *United States v. Stouder,* No. 3:04-1044, 2005 WL 2715666 (M.D. Tenn. Sept. 2, 2005) (prisoner filed fraudulent UCC financing statements against government officials in the amount of $300,000,000.00);

The MDOC most certainly has a legitimate penological purpose in preventing such behavior. It is well established that safety and internal security are legitimate goals for prison administrators. *Overton v. Bazzetta*, 539 U.S. 126, 133 (2003); *Thornburgh v. Abbott*, 490 U.S. 401, 415 (1989); *Hewitt v. Helms*, 459 U.S. 460, 473 (1983); *Turner*, 482 U.S. at 78, 86-87, 92. The MDOC also has an interest in preventing prisoners from committing further crimes. *See Jones v. Caruso*, 569 F.3d 258, 270 (6th Cir. 2009) (citing *Johns v. Mich. Dep't of Corr.*, 1:07-cv-95, 2008 WL 4712360, at *11 (W.D. Mich. Feb. 21, 2008) ("[P]rison officials have a penological interest in preventing inmates from possessing materials that may promote criminal activity.")) The MDOC prisoner mail policy represents a rational means by which to achieve the legitimate goal of preventing prisoners from engaging in fraudulent and illegal behavior. MDOC Policy Directive 05.03.118, ¶ MM(3) prevents prisoners from possessing mail that violates state and federal laws, such as "the filing of a false or fraudulent UCC financing statement in violation of MCL [§] 440.9501." Paragraph MM(11) also prevents prisoners from possessing mail that encourages or provides instruction in the commission of a criminal activity, including "the filing of a false or fraudulent UCC lien." MDOC Policy Directive 05.03.118, ¶ MM(11). The Court concludes, therefore, that there exists a "valid, rational connection" between the policies at issue and a legitimate governmental interest. *See Flagner,* 241 F.3d at 484 (quotation omitted).

In addition, the remaining *Turner* factors do not weigh in Plaintiff's favor. The Constitution does not require that prison officials accommodate inmates' rights in the manner most convenient to those inmates. *See Hudson v. Caruso*, 2007 WL 2363308, at *5 (W.D. Mich. Aug. 16, 2007); *Savko v. Rollins*, 749 F. Supp. 1403, 1414-415 (D. Md. 1990). Rather, the Constitution instructs that prison officials may not infringe upon inmates' constitutional rights, unless necessitated by a legitimate penological purpose. While prisoners within the MDOC may not

possess some UCC materials, they have adequate alternatives to possess and read a wide variety of other political, economic, philosophical and legal materials. *See Jones v. Campbell*, 23 F. App'x 458, 462 (6th Cir. 2001) ("the issue is not whether Jones had an alternative means of receiving one particular catalog, but rather, whether he has alternative means of exercising his First Amendment right to receive, send, and read publications generally"). Furthermore, since all inmates are prohibited from engaging in a business while incarcerated, Plaintiff has no need to possess commercial law material. *See* MICH. DEP'T OF CORR., POLICY DIRECTIVE 05.03.118, ¶ D(7). The resources of the MDOC are limited and the Court must accord "wide-ranging deference" to the solutions implemented by prison officials to combat the very serious problem of UCC-related fraud perpetrated by prisoners. *Flagner,* 241 F.3d at 481 (quotation omitted). Moreover, the burden of accommodating Plaintiff's access to restricted commercial law materials would nullify any benefit the MDOC is seeking to achieve by eliminating certain UCC-related materials from the prison. The Court concludes, therefore, that the challenged policies were reasonably related to legitimate penological interests and satisfies the relevant legal standard. Therefore, Plaintiff fails to state a First Amendment claim.

      D.    **Fourteenth Amendment**

Plaintiff complains that Defendants violated his due process rights and equal protection rights by seizing his book without an administrative hearing.

      1.    <u>Procedural Due Process</u>

The Fourteenth Amendment provides, in part, that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Procedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest. *Zinermon v.*

*Burch*, 494 U.S. 113, 127 (1990); *see also Thompson v. Ashe*, 250 F.3d 399, 407 (6th Cir. 2001) ("Courts have long recognized that the Fourteenth Amendment requires that an individual who is deprived of an interest in liberty or property be given notice and a hearing."). Where a pre-deprivation hearing is impractical, a post-deprivation hearing may be constitutionally adequate. *Zinermon*, 494 U.S. at 128. Many times, a pre-deprivation hearing is impractical because of the prison's legitimate penological need to seize contraband immediately upon discovery. *See Pearce v. Sapp*, No. 97-6373, 1999 WL 503568, at *2 (6th Cir. July 9, 1999). While Plaintiff did not receive a pre-deprivation hearing, the MDOC held an administrative hearing before the book was initially placed on the restricted filer list. (*See* App. D to Compl., Page ID #16, docket #1-5.) Plaintiff also did not receive a post-deprivation administrative hearing but he was able to seek relief through the three-step prison grievance process. Moreover, Plaintiff had the option to preserve the book by sending it out of the prison at his expense. Because Plaintiff had adequate post-deprivation remedies, he fails to state a due process claim. *See Wilson v. Beebe*, 770 F.2d 578, 584 (6th Cir. 1985) (en banc); *Pearce*, 1999 WL 503568, at *2.

To the extent Plaintiff complains that Defendants failed to follow MDOC Policy Directive 05.03.118, ¶ PP, by refusing to hold an administrative hearing after seizing his mail, he also fails to state a claim. Defendants alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is

addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, to the extent that Plaintiff's complaint presents claims under state law, this Court declines to exercise jurisdiction. "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).

### 2. Equal Protection Clause

In his complaint, Plaintiff alleges that Defendants violated his equal protection rights when they confiscated his book because it contained UCC materials. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir. 1998). In addition, prisoners do not have a fundamental right to UCC material under the Constitution.

Because neither a fundamental right nor a suspect class is at issue, the rational basis review standard applies. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a

constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Here, Plaintiff alleges that he was treated differently because Defendants confiscated his book for containing UCC materials. Plaintiff fails, however, to identify any prisoner who was similarly situated to Plaintiff in all relevant respects and did not have the book titled Traveling by Right confiscated under the prisoner mail policy. *See Tri-Health, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 791 (6th Cir. 2005) (discussing requirement that similarly situated inquiry requires disproving all conceivable bases for distinguishing comparables). Moreover, Plaintiff fails to argue that any difference in treatment was intentional. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 129 S. Ct. at 1949-50; *Twombly*, 550 U.S. at 555. Consequently, Plaintiff fails to state claim under the Equal Protection Clause.

E. **Conspiracy**

Plaintiff argues that Defendants engaged in a conspiracy against him under 42 U.S.C. §§ 1985 and 1986. A violation of Section 1986 requires a violation of Section 1985 as a necessary prerequisite. *Boddie v. Am. Broad. Companies, Inc.,* 694 F. Supp. 1304 (N.D. Ohio 1988). To maintain a cause of action for conspiracy under 42 U.S.C. § 1985(3), a plaintiff must establish the following four elements:

> (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.

*Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)). Moreover, a plaintiff must plead a claim of conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102,106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140 at *1 (6th Cir. Oct. 30, 1996). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1196 WL 43541, at *3 (6th Cir. Feb. 1, 1996). A simple allegation that defendants conspired to cover up wrongful actions is too conclusory and too speculative to state a claim of conspiracy. *Birrell v. State of Mich.,* No. 94-2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995). Plaintiff's allegations of conspiracy are vague, conclusory and speculative. He alleges no facts that would support any of the elements of a claim of conspiracy. Accordingly, a Section 1985 conspiracy claim fails.

Section 1986 imposes liability on those who have knowledge of the wrongs prohibited by Section 1985 but failed to prevent them. *Seguin*, 968 F.2d at 590. Absent a violation of Section 1985, a plaintiff may not maintain an action under Section 1986. *See id.*; *Browder v. Tipton,* 630 F.2d 1149, 1155 (6th Cir. 1980). As Plaintiff failed to state a claim under Section 1985, his claim under Section 1986 also fails.

  F. **Remaining Claims**

Plaintiff contends that the rejection of his book violated the preliminary injunction issued by the Eastern District of Michigan in *Jones v. Mich. Dep't of Corr. et al.,* Case No. 2:05-cv-72817, Order at 7, docket #46 (E.D. Mich. Sept. 28, 2006). In that case, the district court issued a preliminary injunction to enjoin the defendants from enforcing the former prisoner mail policy, MDOC Policy Directive 05.03.118, ¶ HH(23) (effective Jan. 1, 2006). Former MDOC Policy Directive 05.03.118, ¶ HH(23), prohibited prisoners from receiving the following mail:

> Mail regarding actions that can be taken under the Uniform Commercial Code (UCC) which could be used to harass or threaten another individual, including the filing of a lien against the individual. This does not include legal materials which set forth the statute or provide a scholarly legal analysis of the UCC.

MICH. DEP'T OF CORR., POLICY DIRECTIVE 05.04.118, ¶ HH(23). The Sixth Circuit affirmed the issuance of the preliminary injunction in *Jones*, 569 F.3d at 278-79. On September 14, 2009, the MDOC modified MDOC Policy Directive 05.03.118 to remove paragraph HH(23). The MDOC then added paragraphs MM(3) and (11) to the prisoner mail policy. Paragraph MM(3) of the prisoner mail policy prohibits mail advocating or promoting the violation of state or federal laws, such as "the filing of a false or fraudulent UCC financing statement in violation of MCL [§] 440.9501." MICH. DEP'T OF CORR., Policy Directive 05.03.118, ¶ MM(3). Moreover, paragraph MM(11) prohibits mail that encourages or provides instruction in the commission of a criminal activity, including the "filing of a false or fraudulent UCC lien." *Id*., at ¶ MM(11). As a result of the September 14, 2009 changes to the prisoner mail policy, the district court eventually removed the preliminary injunction and dismissed the case. *See Jones,* Case No. 2:05-cv-72817, Order & J., docket ##113, 114 (E.D. Mich. Aug. 31, 2010).

Plaintiff alleges that the MDOC simply changed the location of the restrictions to UCC related material found in former MDOC Policy Directive 05.03.118, ¶ HH(23). To the contrary, the MDOC modified its policy by eliminating the challenged provision as well as any

reference to the MDOC prohibiting prisoners from obtaining UCC material. In *Jones,* the district court noted that the revised policy directive still contained a reference to UCC material in paragraphs MM(3) and (11). *See* MDOC POLICY DIRECTIVE 05.03.118, ¶¶ MM(3) & (11). The district court stated:

> As to Plaintiff's Objections indicating that the revised Policy Directive still contains a reference to UCC material, specifically, PD 05.03.118.MM.3 and .11, the Sixth Circuit addressed this issue in its Opinion. The Sixth Circuit noted that "Defendants do not account for the fact that Michigan passed a 2004 law making the filing of fraudulent UCC financing statements with the Secretary of State a Felony . . . . This provides yet another tool MDOC can use to prevent the abuses that [MDOC Policy Directive 05.04.118(HH)(23)] was designed to address." *Jones*, 569 F.3d at 275. It appears that the MDOC revised the Policy Directive in response to the Sixth Circuit's Opinion.

*Jones,* Case No. 2:05-cv-72817, Order at 3, docket #113 (E.D. Mich. Aug. 31, 2010).

In summary, the MDOC revised its policy to address the concerns raised in *Jones*. As revised, the policy does not violate Plaintiff's First Amendment rights. Accordingly, Plaintiff fails to state a claim regarding the changes to the prisoner mail policy.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless

Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).

If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:   January 3, 2011            /s/ Paul L. Maloney
                                    Paul L. Maloney
                                    Chief United States District Judge